UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
LAW ENFORCEMENT SYSTEMS, INC.,
and RICHARD K. CARRIER,

      Plaintiffs,

    -against-

AMERICAN EXPRESS COMPANY,
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC., AMEX
ASSURANCE COMPANY, COUNTRYWIDE
INDUSTRIES, INC., BALBOA INSURANCE
GROUP, and BALBOA LIFE AND CASUALTY,

      Defendants.
----------------------------------------------------------------x

**ORDER**

03-CV-3371 (DLI)(KAM)

DORA L. IRIZARRY, United States District Judge:

  Presently before the Court is defendants' appeal, pursuant to Fed. R. Civ. P. 72(a), from U.S. Magistrate Judge Kiyo A. Matsumoto's decision dated August 4, 2005 insofar as it granted plaintiffs Law Enforcement Systems, Inc.'s ("LES") and Richard K. Carrier's ("Carrier") motion to compel production of discovery in connection with defendants' impending motion to compel arbitration. Because the discovery at issue is relevant to plaintiffs' defenses against a motion to compel arbitration, the Magistrate Judge's decision is neither clearly erroneous nor contrary to law and, therefore, is affirmed.

**Background**

  Plaintiffs bring this putative class-action alleging that defendants have engaged in a pattern of fraudulent billing in its fee-based travel-related insurance programs. (Compl. ¶ 49.) Plaintiff LES is a licensed debt collection agency incorporated under the laws of New York. Plaintiff Carrier, as the president of LES, is authorized to use an American Express ("Amex") card that was issued to

LES in 1991. (*Id.* at ¶ 9.) Additionallly, Carrier is also an individual Amex cardmember. (Id. at ¶ 11.)

Defendants include American Express Company ("Amex"), which is incorporated in New York State, and its subsidiaries, American Express Travel Related Services Company, Inc. ("TRS"), and AMEX Assurance Company ("Amex Assurance"). (*Id.* at ¶¶ 12–14.) Defendant Countrywide Industries, Inc. ("Countrywide") is engaged in mortgage banking and other banking related services and is the parent corporation of defendant Balboa Insurance Group ("Balboa"). Defendant Balboa Insurance Group is the parent company of defendant Balboa Life & Casualty Insurance ("Balboa L & C"). (*Id.* at ¶¶ 15–16.) Plaintiffs allege that Balboa and Balboa L & C were the underwriters of "one or more of the fee-based travel-related insurance plans during some or a part of the relevant time period complained of here." (*Id.* at 16.) For purposes of this appeal, the defendants shall be referred to collectively as "Amex" or "defendants."

Plaintiffs' claims arise out of the alleged fraudulent billing practices by Amex in its fee-based travel related insurance programs. (*Id.* at ¶ 49.) Plaintiffs assert that, from January 2003 to March 2003, they were either mislead into paying or double charged for numerous travel-related services including, but not limited to, Air Flight Insurance, Baggage Insurance, and Travel Delay. (*Id.* at ¶¶ 68, 70–73.) Plaintiffs argue that these billing practices, together with defendants' subsequent attempt to modify the cardmember agreement to waive class action claims and adopt an arbitration clause, amount to a civil racketeering enterprise in violation 18 U.S.C. § 1962(c). Plaintiffs also assert state law claims for fraud, breach of contract, conversion, and violations of the New York General Business Law § 349 based on the same conduct.

At a pre-motion conference held on February 16, 2005, the district court ruled that, prior to

2

allowing Amex to file a motion to compel arbitration, the court would allow discovery to the extent that the discovery sought is relevant to the motion to compel arbitration.[1] The matter was referred to the Magistrate Judge for discovery purposes.

**Discovery Hearing**

On August 3, 2005, the Magistrate Judge held a discovery hearing as a result of plaintiffs' letter motion seeking to compel discovery.[2] At the hearing, the Magistrate Judge compelled the production of documents relating to (1) Amex's adoption of a code filter ("TAA filter") in 2000 that could have "substantially reduce[d] the incidents of improper charges" (Pl.'s June 3, 2005 letter Req. # 7; Disc. Hr'g 28:19–29:7); (2) prior judicial or arbitral findings denying the enforcement of Amex's arbitration clause (based on Amex's assertion that it intended to rely on such rulings to show that its arbitration clause has been held enforceable) (Pl.'s June 3, 2005 letter Req. # 9; Disc. Hr'g 29:9–25); (3) financial information regarding the number of cardmember arbitration claims and cardmember costs relating to arbitration (Pl.'s June 3, 2005 letter Req. # 12; Disc. Hr'g 35:13–20); (4) information reflecting cardmember awareness of the arbitration clause (Pl.'s June 3, 2005 letter Req. # 23; Disc. Hr'g 61:15–16); (5) information reflecting Amex's awareness of the effectiveness or ineffectiveness of communicating with cardmembers via "envelope stuffers" (Pl.'s June 3, 2005 letter Req. # 26; 64:20–22); and (6) witness depositions relating to the last two document requests. (Pl.'s June 3, 2005 letter Req. for Witnesses 3B–3D.)

Defendants appeal these specific rulings on the grounds that the compelled discovery goes

---

[1] "[O]nce the discovery is complete . . . the parties should submit a proposed briefing schedule to me with respect to the arbitration motion." (Req. for Judicial Notice Ex. 6 23:14–21.)

[2] "Disc. Hr'g" refers to the transcript of the discovery hearing which is attached as exhibit 3 to defendants' Request for Judicial Notice dated August 18, 2005.

3

beyond the "gateway issues governing the outcome of the motion to compel arbitration." (Defs.' Objections 1.) Plaintiffs argue that the requested discovery is necessary to establish plaintiffs' defenses against arbitration. (Pls.' Resp. 2.)

## Discussion

**Standard of Review**

"A party seeking to overturn a discovery order . . . bears a heavy burden." *AMW Materials Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67, 70 (E.D.N.Y. 2003). Nondispositive pretrial orders, such as rulings at issue here, are reviewed under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

Furthermore, in ruling on defendants' objections, the court is mindful of the broad discovery standard set forth in Fed. R. Civ. P. 26(b)(1), that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

Accordingly, this court must affirm the Magistrate Judge's decision, unless it is clearly erroneous or contrary to law.

**TAA Filter (Req. # 7)**

Plaintiffs assert that, by the year 2000, Amex had developed a TAA filter that was capable of reducing the number of improper charges in its insurance programs. Yet, rather than apply this filter to all of its travel-related insurance programs in the year 2000, plaintiffs allege that Amex chose to delay the filter's application to its major insurance programs until late 2002. (Disc. Hr'g 15:9–19.) Plaintiffs argue that discovery relating to the development and adoption of this filter would establish that, at the time that Amex sought to modify the cardmember agreement to waive

4

class action claims and to adopt an arbitration clause, Amex knew of its potential exposure to class action liability but concealed this knowledge from its cardmembers. Such a concealment, plaintiffs contend, establishes that the cardmember agreement was fraudulently modified rendering the arbitration clause unenforceable.[3]

A "party resisting arbitration of course may attack directly the validity of the agreement to arbitrate . . . and may attempt to make a showing that . . . the agreement was affected by fraud, undue influence, or overwhelming bargaining power, that enforcement would be unreasonable and unjust, or that proceedings in the contractual forum will be so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of his day in court." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632 (1985) (internal quotation and citations omitted). In determining whether parties have agreed to arbitrate, federal courts "generally apply state-law principles that govern the formation of contracts." *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000). In New York, "[p]roof of fraud requires a showing of either an affirmative misrepresentation of a material fact, or an omission of a material fact coupled with a duty of disclosure. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuala*, 991 F.2d 42, 47 (2d Cir. 1993) (*citing Barclay Arms, Inc. v. Barclay Arms Assocs.*, 74 N.Y.2d 644, 542 N.Y.S.2d 512, 514, 540 N.E.2d 707, 709 (1989); *Aaron Ferer & Sons v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir.1984) (applying New York law)). However, "the Supreme Court clearly distinguished between fraud in the inducement of the arbitration clause itself, which may be considered by the federal court, and fraud in the inducement of the contract generally." *Campaniello*

---

[3] "[I]f I can prove that American Express was aware that it was exposed for hundreds of millions of dollars of class action liability at the time that it proposed to its customers a modification [ ] limit[ing] [a] class action right, then I would be able to defend against that imposition of the modification on the ground that it was imposed without full disclosure." (Disc. Hr'g 12:7–13.)

*Import, Ltd. v. Saporiti Italia S.p.A,* 117 F.3d 655, 667 (2d Cir. 1997) (*citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1805-06, 18 L. Ed. 2d 1270 (1970)).

Unlike the plaintiffs in *Campaniello*, who failed to adduce "particularized facts specific to . . . the arbitration clause which indicate how it was used to effect the scheme to defraud," *Campaniello*, 117 F.3d at 667, plaintiffs here appear to assert a specific claim of fraud going directly to the adoption of the arbitration clause. In light of such a specific claim, the discovery relating to the TAA filter was properly compelled by the Magistrate Judge, and that decision is affirmed.

**Prior Judicial or Arbitral Findings (Req. # 9)**

Defendants were ordered to produce all those decisions in which defendant was a party involving the enforceability of the instant arbitration clause. (Disc. Hr'g 41:18–20.) The Magistrate Judge accepted plaintiffs' argument that these decisions were relevant to its collateral estoppel defense. (Disc. Hr'g 40:10–12.) Plaintiffs essentially argue that a previous adjudication that the arbitration clause is unenforceable would bar Amex from re-litigating the issue here.

Collateral estoppel bars a party from relitigating "an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir.1991); *accord Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir.1993). Because "[t]he party seeking the benefit of collateral estoppel bears the burden of proving the identity of issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues," *In re PCH Assoc.*, 949 F.2d 585, 593 (2d Cir.1991), the decisions at issue clearly are relevant to plaintiffs' defense. The Magistrate Judge's ruling with respect to this request is affirmed.

**Number of Cardmember Arbitration Claims and Related Costs (Req. # 12)**

Defendants also appeal the Magistrate Judge's order compelling disclosure of the number of arbitrations, and their related costs, involving travel-related insurance program charges. (Disc. Hr'g 29:9–25.) Plaintiffs argue that the costs of arbitration are so prohibitively expensive that the arbitration clause should not be enforced. (*Id.* at 31:22–32:8.)

In *Green Tree Financial Corp. v. Randolph*, the Supreme Court held that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." 531 U.S. 79, 522, 1221 S. Ct. 513 (2000). Plaintiffs here seek information regarding the number of cardmember claims and related costs in order to make the requisite showing under *Green Tree*. Accordingly, the Magistrate Judge's ruling compelling disclosure of such claims and costs cannot be said to be clearly erroneous or contrary to law and, therefore, is affirmed.

**Cardmember Awareness of the Arbitration Clause (Req. # 23) and Effectiveness of Communications Via "envelope stuffers" (Req. # 26)**

Amex was ordered to produce any information in its possession regarding cardmembers' awareness of the instant arbitration clause and any consumer studies regarding knowledge in the industry about the effectiveness of communicating via "envelope stuffers." (Disc. Hr'g 60:21, 61:15–16.)

Plaintiffs argue that the requested discovery is relevant to establish that Amex's modification of the cardmember agreement is unconscionable and therefore unenforceable. "In general, an unconscionable contract has been defined as one which is so grossly unreasonable [because of] an absence of meaningful choice on the part of one of the parties together with contract terms which

7

are unreasonably favorable to the other party." *King v. Fox*, --- N.E.2d ---, 2006 WL 1593970 slip op. (June 13, 2006) (*citing Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988)). At the hearing, plaintiffs explained that if Amex sought to modify the cardmember agreement unilaterally—using what Amex knows to be an ineffective means of communication—then plaintiffs could establish (1) plaintiffs' lack of meaningful choice (since envelope stuffers are an ineffective means of communication) and (2) contract terms that unreasonably favor Amex.

Both *King v. Fox*, and *Gillman v. Chase Manhattan Bank*, *supra*, legally support the Magistrate Judge's order to compel this disclosure. Thus her ruling is neither contrary to law nor clearly erroneous, and it is affirmed.

**Conclusion**

For the foregoing reasons, defendants' motion to set aside Magistrate Judge Matsumoto's August 3, 2005 order compelling discovery is denied.

SO ORDERED.

Dated: Brooklyn, New York
      July 17, 2006

/s/
Dora L. Irizarry
United States District Judge